UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | )
|---|---|
| ABIGAIL OYOLA, on behalf of herself and all other persons similarly situated, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MIDLAND FUNDING, LLC, | ) |
| | ) |
| Defendant. | ) |

Civil Action No. 17-40040-TSH

_____)

**DEFENDANT MIDLAND FUNDING, LLC'S MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL ARBITRATION,
DISMISS THE CASE, AND STRIKE CLASS ALLEGATIONS**

Defendant Midland Funding, LLC ("Defendant" or "Midland Funding"), pursuant to the

Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14, hereby moves for an Order compelling arbitration

of the individual claims filed by Plaintiff Abigail Oyola ("Plaintiff"), dismissing Plaintiff's individual

claims in this case pending arbitration and striking the class allegations, or, in the alternative, staying

the action (the "Motion to Compel").  In support of its Motion to Compel, Midland Funding submits

the following Memorandum of Law.

**PRELIMINARY STATEMENT**

Defendant's Motion to Compel should be granted for one simple reason: Plaintiff *contractually*

*agreed* to pursue all claims against Defendant[1] via binding arbitration.  Plaintiff has accordingly

waived her right to seek any remedies against Defendant in this Court—her avenue for relief lies

wholly and solely in arbitration on an individual basis.

---

[1] As set forth more fully herein, Plaintiff entered into a binding arbitration agreement with Credit One Bank, N.A. ("Credit One") as the result of opening a credit card account.  The subject account (including the right to compel arbitration) was subsequently assigned to Defendant.

In her Complaint, Plaintiff admits that she incurred and owed a debt on a credit card account. (*See* Am. Compl. ¶ 6 [Doc. No. 11 at 2].)  Plaintiff also concedes that Defendant purchased that debt. *See id*.  She alleges, on behalf of a putative class, that Defendant sought to collect debt in Massachusetts without a debt collector license and in so doing purportedly violated the Fair Debt Collection Practices Act ("FDCPA"), Massachusetts Debt Collection Practices Act, G.L. c. 93, §24A(a), and the Massachusetts Consumer Protection Act, G.L. c. 93A, §2.  (*See id*. at ¶ 1.)

Plaintiff, however, flatly ignores that she agreed to "mandatory, binding arbitration" for the claims raised in the Complaint, including claims concerning "collections matters relating to [her] account." (Credit One's Visa/Mastercard Cardholder Agreement, Disclosure Statement and Arbitration Agreement (the "Card Agreement") at 6, Exhibit C of the Affidavit of Vicki Scott (the "Scott Aff."), attached hereto as ***Exhibit A***.)  Plaintiff further agreed that "Claims made as part of a class action . . . and the arbitration of such Claims must proceed on an individual basis." *Id.*  Moreover, the arbitration agreement contained in the Card Agreement contains a delegation provision, which provides that the arbitrator, and not this Court, should decide questions regarding the application, enforceability or interpretation of the arbitration agreement.

Based on the terms of the debt that Plaintiff admits she incurred, there is an enforceable agreement to arbitrate.  The arbitration provision is broad and encompasses the claims raised in Plaintiff's Amended Complaint.  Pursuant to binding Supreme Court and First Circuit precedent, this Court should grant this Motion, compel arbitration of Plaintiff's claims on an individual basis, strike the class allegations from the Amended Complaint, and dismiss the case.

## BACKGROUND

### A.     The Debt, Including the Right to Compel Arbitration, is Assigned to Midland Funding

On September 4, 2014, Plaintiff opened a credit card account with Credit One Bank ("Credit One") bearing the account number ending in 8308 (the "Account.") (*See* Vicki Scott Aff., at ¶¶ 5, 7.) Credit One mailed to Plaintiff her new credit card and the Card Agreement governing the Account. (*See id.* ¶ 7.)

Plaintiff received the Card Agreement and did not opt out of any of its terms and conditions. (*See* Scott Aff. ¶ 9.) Plaintiff received sufficient notice of the terms and conditions of the Card Agreement at issue because the record evidence establishes that the Plaintiff received the Card Agreement for the Account—which Credit One mailed to Plaintiff, accompanying the credit card that Plaintiff activated and used. (*See id.* ¶¶ 7–8.)

Through a series of transactions, Defendant became Credit One's successor.  First, after Plaintiff repeatedly failed to pay her past-due bills from Credit One, on September 30, 2015, "Credit One sold, assigned and conveyed all rights, title and interest to a series of accounts that originated with Credit One, including the Account, to MHC Receivables, LLC ('MHC')." (*See id.* ¶ 6; Bill of Sale from Credit One to MHC, attached as Ex. A to Scott Aff.)  On October 19, 2015, MHC sold and assigned a series of accounts, including the Account, to Sherman Originator III LLC ("Sherman Originator"). (*See* Scott Aff. ¶ 7; Bill of Sale and Assignment from MHC and FNBM, LLC to Sherman Originator, attached  to as Ex. B to Scott Aff.)  Finally, on October 23, 2015, Sherman Originator sold and assigned a series of accounts, including the Account, to Defendant (*See* Declaration of James Collins (the "Collins Dec.") at ¶ 7, attached hereto as ***Exhibit B***; Bill of Sale and Assignment from Sherman Originator to Defendant, attached as Ex. A to Collins Dec.) Accordingly, Defendant is Credit One's successor-in-interest. Page 2 of the Cardholder Agreement states that "[b]y requesting and

receiving, signing or using your Card" Plaintiff agreed to its terms.  (*See* Exhibit B to Scott Aff.)  As evidenced by the balance maintained on the Oyola Account and the credit card statements reflecting those purchases, Plaintiff used the credit card account.  (*See* Scott Aff. at ¶ 8.)

      **B.**      **The Binding Agreement to Arbitrate**

      The Card Agreement contains an "Arbitration" provision (the "Arbitration Agreement") which is titled "<u>ARBITRATION</u>" and states:

> **PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION.  ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.  ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.  IN ARBITRATION, YOU MAY CHOOSE TO HAVE A HEARING AND BE REPRESENTED BY COUNSEL.**

(*See* Card Agreement at 6 (all emphasis in original).)

      The Arbitration Agreement broadly defines claims subject to arbitration as those related to "collections matters relating to your account," "any other matters related to your account," and "the application, enforceability or interpretation of this Agreement, including this arbitration provision." *Id.*  The Arbitration Agreement explicitly states that it applies to Credit One's successors and assigns as well as any affiliates.  *See id*. at 2, 6.  The Arbitration Agreement further provides that "[a]ny questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced" and that the "arbitration provision is governed by the Federal Arbitration Act ("FAA")."  *Id.*

      The Arbitration Agreement makes clear that the parties are waiving the right to litigate disputes and to participate in class action or similar proceedings by stating that: "Claims subject to arbitration

4

include Claims made as part of a class action or other representative action, and the arbitration of such claims must proceed on an individual basis." *Id*. at 10. Finally, the Cardholder Agreement survives the "transfer or assignment of your account, or any amounts on your account, to any other person." *Id*. at 10.

## **STANDARD OF REVIEW**

The FAA mandates that all arbitration agreements (with limited exceptions not applicable here) "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It is well-settled that the FAA reflects a strong federal policy favoring the enforceability of arbitration agreements. *See, e.g.*, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (determining that Section 2 of the FAA establishes "'a liberal federal policy favoring arbitration agreements'") (citations omitted). Indeed, the Supreme Court has explained that "the 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alteration in original) (quoting *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). Supreme Court precedent construing motions to compel arbitration under the FAA has "repeatedly described the Act as 'emobd[ying] [a] national policy favoring arbitration,' . . . and 'a liberal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'" *Id*. (first quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) and second *Moses H. Cone Mem'l Hosp. v. Mercury Constr., Corp.*, 460 U.S. 1, 24 (1983)). As the Supreme Court recently recognized in *Kindred Nursing Centers Limited Partnership v. Clark*, 137 S.Ct. 1421, 1428 (2017), that the Federal Arbitration Act's ("FAA") "key provision" provides "an arbitration agreement must ordinarily be treated as 'valid, irrevocable and enforceable.'" *Id*. at 8 (quoting 9 U.S.C. § 2).

Under Section 4 of the FAA, a court must order arbitration if the petitioning party is "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under [a] written agreement for arbitration . . ." 9 U.S.C. § 4.  The FAA provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under any such agreement, ***shall*** *on the application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .*"  9 U.S.C. § 3 (emphasis added).  "Erosion of the substance of current arbitration rules, by contortion of means for their enforcement, makes those substantive rules illusory." *Cullinane v. Uber Techs., Inc.*, No. 14-cv-14750, 2016 WL 3751652, at *7 (D. Mass. July 11, 2016).

## ARGUMENT

**I.   THE ARBITRATION PROVISION REQUIRES THAT THE ARBITRATOR RESOLVE "GATEWAY" ISSUES, SUCH AS THE ENFORCEABILITY OF THE CARD AGREEMENT AND THE ARBITRATION PROVISION**

### *A.    The Arbitration Agreement Contains a Delegation Provision*

The Arbitration Agreement specifically delegates to the arbitrator the issues of the application, enforceability, or interpretation of the Card Agreement, including the Arbitration Agreement. Specifically, the Card Agreement states, "Claims subject to arbitration include . . . the application, enforceability or interpretation of this Agreement, including this arbitration provision." (Card Agreement at 6.) Thus, pursuant to the Arbitration Agreement, whether this dispute is arbitrable is a matter properly decided by the arbitrator, not the Court.

### *B.    Where an Arbitration Provision has a Delegation Clause, the Validity of the Arbitration Provision is a Matter for the Arbitrator to Decide*

"Where the parties have themselves 'clearly and unmistakably agreed' that the arbitrator should decide whether an issue is arbitrable, the Supreme Court has held that this issue is to be decided

by the arbitrator." *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10 (1st Cir. 2009) (*citing Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *see also Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 472 (1st Cir. 1989) ("We do not reach any of these arguments because we find that the parties contracted to submit issues of arbitrability to the arbitrator."). Accordingly, where, as here, there is a provision delegating decisions regarding the enforceability of an arbitration provision to an arbitrator, the court need not—and should not—decide them. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (recognizing "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy") (citations omitted); *see also Buckeye Check Cashing*, 546 U.S. at 449 ("[A] challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.") In *Rent-A-Center*, the Supreme Court held that a delegation provision "is valid under § 2 [of the FAA] 'save upon such grounds as exist at law or in equity for the revocation of any contract,'" though only when such grounds are directed specifically at the agreement to arbitrate, not the contract in general. *Rent-A-Center*, 561 U.S. at 70–71. Because the plaintiff in *Rent-A-Center* did not specifically challenge the agreement to arbitrate, but rather, argued that the contract as a whole was unconscionable, the Court held that the delegation clause was enforceable and that the arbitrator must decide whether the claims at issue were subject to arbitration. *See id.* at 72–73.

A number of federal courts have compelled arbitration, even where a plaintiff disputes that he agreed to an arbitration provision in a card agreement. *See Spencer v. Midland Funding*, No. 3:16-cv-00093-BR, 2016 WL 8677216, *3 (D. Or. Oct. 21, 2016) (determining that "when a plaintiff's legal challenge is that the contract as a whole is nonexistent, invalid, or unenforceable, the arbitrator decides the validity of the contract, including derivatively the validity of the arbitration clause" and granting the motion to compel arbitration because "[the p]laintiff does not specifically challenge the validity of

the arbitration provision standing alone, but provides various reasons why the Card Agreement itself is unenforceable"); *see also Bellows v. Midland Credit Mgmt., Inc.*, No. 09-cv-1951, 2011 WL 1691323, at *2 (S.D. Cal. May 4, 2011) (holding that "the decision is even easier here, because the arbitration agreement provides that the arbitrator is to decide questions concerning the validity of the arbitration agreement" and finding that "[a]s provided in the Agreement the determinations of whether the arbitration agreement was validly entered into, and whether Midland can enforce it, are committed to the arbitrator" (citing *Awuah*, 554 F.3d 7, with approval)).

Here, the Arbitration Provision in the Card Agreement clearly states that the "application, enforceability or interpretation of this Agreement, including this arbitration provision" is a "claim[] subject to arbitration" and thus, whether Plaintiff's claims are arbitrable should be determined in the first instance by an arbitrator and not the Court. Following *Awuah* and *Rent-A-Car*, the gateway questions of the application, enforceability, and interpretation of the Card Agreement and its arbitration provisions have been delegated to the arbitrator. Thus, the Court should compel arbitration on this ground alone.

Even if this Court were to determine that it, and not an arbitrator, should determine the validity of the Arbitration Agreement this case should be compelled to arbitration. In two strikingly similar cases, *Harris v. Midland Credit Management, Inc.*, No. 15-4453, 2016 WL 475349 (D.N.J. February 8, 2016) and *Jeffreys v. Midland Credit Management, Inc.*, No. 15-8470, 2016 WL 4443164 (D.N.J. August 18, 2016), district courts within a Sister Circuit have compelled arbitration in favor of Defendant's affiliate where a plaintiff asserts FDCPA claims arising out of a Credit One credit card account. *See Harris*, 2016 WL 475349, at *2 (holding that a valid arbitration agreement existed and that the FDCPA claims fell within the scope of the arbitration agreement); *Jeffreys*, 2016 WL 4443164, at *2 ("MCM has been assigned the debt, and thus MCM is authorized to invoke the provisions in

issue from the cardholder agreement").  Accordingly, given that two other district courts have recently compelled arbitration based on similar record evidence such as affidavits and declarations that are based on the identical Card Agreement, the facts here weigh heavily in favor of compelling arbitration.[2]

## II.   PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION BECAUSE THE RECORD EVIDENCE DEMONSTRATES MIDLAND FUNDING WAS CREDIT ONE'S SUCCESSOR AND PLAINTIFF'S CLAIMS PERTAIN TO A COLLECTION MATTER

Even if the Card Agreement did not contain a delegation clause, the Court should compel arbitration because Plaintiff's claims fall squarely within the Arbitration Agreement, as Midland Funding was Credit One's successor and Plaintiff's claims pertain to collection efforts regarding the Account. The Arbitration Agreement provides that any claims between Credit One and Plaintiff may, at either's election, "be submitted to mandatory, binding arbitration." (Card Agreement at 6.) The Arbitration Provision further states that "Claims subject to arbitration include . . . disputes relating to . . . collections matters relating to your account." (*Id.*) Further, the Arbitration Agreement specifies, "Claims subject to arbitration include . . . Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors (and the employees, officers and directors of all these entities) . . . ." *Id.*

---

[2] The Cardholder Agreement is "governed by and interpreted in accordance with the laws of Nevada." Cardholder Agreement at 4.  In Nevada, "there is a strong public policy favoring contractual provisions requiring arbitration as a dispute resolution mechanism."  *Philips v. Parker*, 106 Nev. 415, 417 (Nev. 1990).  Moreover, under Nevada law, "all doubts concerning the arbitrability of the subject matter should be resolved in favor of arbitration."  *Id.*  Any analysis of whether there is a valid agreement to arbitrate would be the same even if this Court applied Massachusetts law.  *See, e.g.*, *Boule v. Credit One Bank*, No. 15-cv-8562, 2016 WL 3015251, *2, n.1 (S.D.N.Y. May 11, 2016) (applying New York law and finding that "[g]iven the relatively straightforward contract interpretation issues presented, the Court notes that, even under Nevada law, it would find Plaintiff's claim is subject to arbitration.").

**A.  The Record Evidence Demonstrates the Account was Included in the Pool of Charged Off Accounts Sold to Midland Funding**

Together, the Scott Affidavit and the Collins Declaration establish that Midland Funding is Credit One's successor because they demonstrate that Midland Funding owns the Account. Specifically, the Account was included in the portfolio of charged-off accounts eventually sold to Midland Funding.[3]

The Scott Affidavit states, "Pursuant to the Bill of Sale and Assignment dated September 30, 2015, Credit One sold, assigned and conveyed all rights, title and interest to a series of accounts that originated with Credit One, including the Account, to MHC Receivables, LLC ('MHC')." (Scott Aff. ¶ 6.) The Affidavit then discusses the next sale of the Account, stating that on "October 19, 2015, MHC sold, assigned and conveyed all rights, title and interest to a series of accounts that originated with Credit One, including the Account, to Sherman Originator III LLC." (Scott Aff. ¶ 7.) Thus, the Scott Affidavit establishes chain of title for the Account from Credit One to Sherman Originator.

The Collins Declaration establishes chain of title for the Account from Sherman Originator to Defendant. The Collins Declaration states: "On October 23, 2015, Midland Funding purchased Ms. Oyola's charged-off Account from Sherman as part of a portfolio of charged-off Credit One debts owned by Sherman."  (Collins Dec. at ¶ 7.)

The Bill of Sale and Assignment from Sherman Originator to Defendant further establishes that Defendant owns the Account, as it evidences Defendant's purchase of the Account, along with a pool of the other accounts Sherman Originator purchased from MHC. (*See* Ex. A to Collins Dec.) Finally, the electronic data submitted to Defendant by Sherman Originator clearly demonstrates that

---

[3] Plaintiff cannot reasonably contest that Midland purchased her Account, as Plaintiff alleges, "On or about October 23, 2015, Midland purchased a defaulted debt owed by Ms. Oyola for a credit card account." (Compl. ¶ 6.)

Midland Funding owns the Account. (*See* Ex. C. to Collins Dec.)  These documents constitute record evidence proving that the Account was included in the portfolio of charged-off accounts sold to Defendant.

Numerous district courts have found virtually identical information sufficient for Midland Funding and its affiliates to establish chain of title in the context of a motion to compel arbitration. *See, e.g.*, *Orlob-Radford v. Midland Funding, LLC*, No. 15-cv-00307, 2016 WL 5859002, *5–6 (E.D. Wash. Oct. 5, 2016) (decided after briefing was concluded on Midland's initial Motion to Compel and granting Motion to Compel Arbitration based on a Declaration that included same electronic data at issue here; finding that "the Defendants' interest in the accuracy of the documents furnished by FIA Card Services is obvious and substantial"); *Bey v. Midland Credit Mgmt., Inc*., No. GJH-15-1329, 2016 WL 1226648, *3–5 (D. Md. March 23, 2016) (holding that Midland was the assignee of the original creditor based on a bill of sale, affidavit of original creditor and Midland affidavit that "established that [the plaintiff's] account was one of the accounts included in that bill of sale;" also relying on an "abstract of the true and correct data from the electronic file pertaining to the Bey Account, including the last four digits of his account number, the date the account was opened, the charge-off date and charge-off amount, the sale amount, and other relevant information."); *Funderburke v. Midland Funding LLC*, No. 12-2221-JAR/DJW, 2013 WL 394198, *5 (D. Kan. Feb. 1, 2013) ( "In addition to the bill of sale evidencing the assignment, the [Midland affiant] also submits an abstract from a voluminous Excel file of the data pertaining to Plaintiff's Associates Account. The [Midland affiant] states that the Excel file was included in the electronic records on charged off accounts that Citibank transferred to Midland as part of the sale. The Court further finds that this evidence shows that Plaintiff's debt was included in the assignment to Midland.").

Finally, in *Hays v. Jefferson Cap. Sys., LLC*, No. 15-14025-GAO, 2017 WL 449590 (D. Mass. February 2, 2017), a court from this District recently granted a motion to compel arbitration over the plaintiff's evidentiary objections. In so doing, the court held that:

> The plaintiff does not attempt to contradict the defendant's showing of the formation and existence of an agreement to arbitrate. Rather, he raises evidentiary objections to the Court's consideration of . . . declarations and exhibits. His objections are without merit . . . [based on] a qualified affiant whose declarations sufficiently authenticate the business records he has provided.

*Id*. at *2 (citations omitted).

The Scott Affidavit and Collins Declaration and exhibits thereto are properly authenticated and show a clear chain of title demonstrating Defendant's purchase of the Account.  As such, this Court should grant Midland Funding's Motion to Compel.[4]

**B.     Plaintiff's Claims Pertain to Collection Efforts Related to her Account**

All of Plaintiff's individual allegations pertain only to collection efforts relating to her account. Plaintiff alleges that Defendant "filed a collection complaint in the Small Claims Division of the Worcester District Court . . . against Ms. Oyola to recover the Debt." (Compl. ¶ 8.) Plaintiff's debt was her debt related to the Account. (*See* Compl. ¶ 6 ("On or about October 23, 2015 Midland purchased a defaulted debt owed by Ms. Oyola for a credit card account. (The Debt).")) All three of Plaintiff's causes of action are based upon Midland Funding's purported collection efforts relating to the Account. Specifically, Count I alleges that "Midland violated the FDCPA by engaging in unlicensed debt collection efforts against Ms. Oyola . . . ." (Compl. ¶ 36.) Count II alleges that "Midland's [*sic*] engaged in unlicensed debt collection efforts against Ms. Oyola . . . in violation of G.L. c. 93, § 12." (Compl. ¶ 40.) Count III alleges that "Midland's unlicensed debt collection efforts

---

[4] *Hays* also recognized that an assignee "can rely on the original creditor's business records and normal course of business to prove" chain of title. *Id.* at *1, n.1 (citing *Hoefs v. CACV of Colo., LLC*, 365 F. Supp. 2d 69, 73–74 (D. Mass. 2005)).

against Ms. Oyola . . . were unfair or deceptive acts or practices, in violation of G.L. c. 93A, § 2." (Compl. ¶ 47.)

While the scope of the arbitration agreement should be determined by the arbitrator based on the delegation provision,[5] to the extent the Court reaches this issue, Plaintiff's claims fall within the scope of the Arbitration Agreement.  It is well-settled that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25.

In *Boule*, a federal district court rejected a plaintiff's argument that a claim under the Telephone Consumer Protection Act was not within the scope of the identical arbitration provision at issue. Boule, 2016 WL 3015251, at *4–5.  In so doing, the court found that the claims must be compelled to arbitration given the broad language of the agreement which applied to disputes relating to "communications" in connection with a customer's account. *Id*. at *4.  The court also found that where the arbitration provision contained broad language, as here, "'the strong presumption in favor of arbitrability applies with even greater force.'" *Id.* (citations omitted).  The First Circuit likewise has held it will compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 450 (1st Cir. 2010).  Here, there is no such "positive assurance" that the Arbitration Agreement is "not susceptible of an interpretation that covers the asserted dispute."  In fact, the terms of the Arbitration Agreement, which mandate arbitration for any claims regarding "collections matters," clearly demonstrate that this case should be compelled to arbitration.

---

[5] *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1281 (10th Cir. 2017) ("In other words, the question of *who* should decide arbitrability precedes the question of *whether* a dispute is arbitrable.") (emphasis supplied).

Based on the fact that Plaintiff's individual claims relate to collections matters relating to the Account, and because Defendant is Credit One's successor, Plaintiff's individual claims fall squarely within the Arbitration Agreement and must be arbitrated.

## III.   PLAINTIFF'S CLAIMS MAY ONLY BE ARBITRATED ON AN INDIVIDUAL BASIS

Plaintiff's Card Agreement contains an unambiguous classaction waiver clause.  (*See* Exhibit C to Vicki Scott Aff. at 6 (stating that (i) "**ARBITRATION REPLACES** . . . **THE RIGHT TO PARTICIPATE IN A CLASS ACTION**," (ii) "Claims subject to arbitration include Claims made as part of a class action or other representative action, and the arbitration of such claims must proceed on an individual basis" and (iii) "If you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the claim in any litigation, whether as a class action . . .or other representative action or otherwise.")).

At the outset, the issue of whether Plaintiff agreed to a class action waiver falls within the ambit of the delegation clause and should therefore be determined by the arbitrator.  *See, e.g.*, *Anderson v. Comcast Corp.*, 500 F.3d 66, 72 (1st Cir. 2007) (holding that when construing class action waiver "proper course was to compel arbitration" and "leave determination of the class action question in the first instance to the arbitrator.").

To the extent this Court elects to reach the issue, it is bound to follow *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), where the Supreme Court made clear that class action waivers are valid and enforceable under the FAA.  *See id.* at 748.  The Supreme Court reasoned the enforcement of class action waiver provisions in arbitration agreements is required by the FAA because:

> The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.' . . . . In light of these provisions, we have held that parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit ***with whom*** a party will arbitrate its disputes.

> The point of affording parties discretion in designing arbitration processes is to allow for efficient, streamlined procedures tailored to the type of dispute . . . . And the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed of resolution.

131 S. Ct. at 1748-49 (internal citations omitted; emphasis added).

The Supreme Court has also rejected arguments that a waiver of class actions in an arbitration agreement would contravene substantive law and has upheld a waiver where the costs of individually arbitrating a federal statutory claim exceed the potential recovery. *See American Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *see also Hopkinton Drug, Inc. v. CaremarkPCS, L.L.C.*, 77 F. Supp. 3d 237, 247–48 (D. Mass. 2015) (determining that "[i]n *Concepcion*, the Court held that the Federal Arbitration Act overruled state laws that sought to mandate class action procedures in consumer arbitration cases" and finding that "[i]n *American Express*, the Supreme Court emphasized that, absent a clear federal statutory command to the contrary, class action waivers are valid.").

Moreover, Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for [in the parties'] agreement." 9 U.S.C. § 4; 131 S. Ct. 1740, 1748 (2011) ("The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." (internal quotations and citations omitted). The principles enshrined in the FAA must be honored here to enforce the class action waiver to which Plaintiff agreed.

In accordance with this controlling Supreme Court precedent, this Court is obligated to apply the class waiver provisions and compel Plaintiff to arbitrate her claims against Midland Funding through an individual arbitration proceeding.

## V.   THE COURT SHOULD DISMISS THIS MATTER PURSUANT TO THE PROCEDURE PROSCRIBED BY THE FIRST CIRCUIT

The First Circuit has held that "[w]here one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if *all* claims

asserted in such case are found arbitrable." *Next Step Medical Co., Inc. v. Johnson & Johnson Intern.*, 619 F.3d 67, 71 (1st Cir. 2010) (emphasis supplied).  Given that all of the claims raised by Plaintiff in this matter are arbitrable under the Card Agreement, the case should be dismissed.  *See Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 313 (D. Mass. 2016) (granting motion to compel and dismissing case because plaintiff's "only claim is arbitrable.").

In the alternative, if this Court declines to enter an order dismissing the matter, Midland Funding requests that this action be stayed pending arbitration.

## CONCLUSION

The terms and conditions of the Card Agreement and its arbitration provisions unquestionably create an enforceable agreement to arbitrate. The Arbitration Agreement is broad and encompasses Plaintiff's claims. Accordingly, pursuant to the United States Supreme Court decisions in *Concepcion* and its progeny, this Court should grant this Motion and compel arbitration of Plaintiff's individual claims. And because Plaintiff cannot arbitrate on a class-wide basis, the Court should strike the class allegations.

For the foregoing reasons, Midland Funding respectfully requests that this Court enter an order compelling Plaintiff to arbitrate her claims in this action on an individual basis, dismissing the action pending such arbitration, and striking the class allegations, or, in the alternative, staying the action pending arbitration.

Respectfully submitted,

MIDLAND FUNDING, LLC.
By its attorneys,

/s/ Stephen P. Hall
Gordon P. Katz (BBO #261080)
Benjamin M. McGovern (BBO #661611)
Stephen P. Hall (BBO #679583)
HOLLAND & KNIGHT LLP
10 Saint James Avenue
Boston, MA 02116
gordon.katz@hklaw.com
benjamin.mcgovern@hklaw.com
stephen.hall@hklaw.com

Dated: May 31, 2017

## CERTIFICATE OF SERVICE

I, Stephen P. Hall, hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent those indicated as non-registered participants.

/s/ Stephen P. Hall
Stephen P. Hall