UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABIGAIL OYOLA, on behalf<br>of herself and all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC<br>    Defendant. | C.A. No. 4:17-40040-TSH |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION, DISMISS THE CASE, AND STRIKE CLASS ALLEGATIONS**

Now comes Plaintiff Abigail Oyola (Ms. Oyola), on behalf of herself and all others similarly situated, by and through undersigned counsel, who respectfully requests that the Court deny Defendant's Motion to Compel Arbitration, Dismiss the Case, and Strike Class Allegations (Doc. No. 20). In support, Ms. Oyola states the following.

### I.  FACTS

It is undisputed that Ms. Oyola had a credit card account with Credit One Bank that was assigned to Midland Funding, LLC (Midland). (Mtn to Compel, at 3). However, Ms. Oyola disputes ever receiving notice of an arbitration clause regarding her account. (Aff. of Oyola, **Exhibit A**, at ¶ 3. She had no knowledge of any arbitration agreement until being informed of Midland's Motion to Compel in this case. *Id*. at ¶ 4. She denies ever agreeing to the purported arbitration agreement, and disputes its formation. *Id.* at ¶¶ 2-5.

Midland has failed to provide evidence regarding basic information on Ms. Oyola's

account. It has not stated whether the account was opened online, by phone, by mail, or in person. There is no signed credit card application or signed copy of the terms and conditions. Accordingly, there is no basis to conclude that Ms. Oyola affirmatively agreed to any such arbitration agreement.

## II.   STANDARD OF REVIEW

"Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986). Indeed,"a party will suffer irreparable harm if compelled to arbitrate in the absence of any agreement to do so." *GTFM v. TKN Sales, Inc.*, 2000 WL 364871, at *2 (S.D.N.Y. Apr. 7, 2000), *rev'd on other grounds*, 257 F.3d 235 (2d Cir. 2001).

As the Supreme Court has stated, "[W]e look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002); *accord Granite Rock Co., v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010) ("Nor have we held that court may use policy considerations as a substitute for party agreement."). "Although national policy favors the resolution of controversies through arbitration . . . submission of disputes to this type of forum is totally dependent on the private will of the parties as embodied in whatever contract they may have entered into. *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir., 1998) (citations omitted).

A party who is seeking to compel arbitration has the burden to prove: (1) that a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration clause, (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope. *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 293 (D. Mass., 2016). "Whether or not a dispute is arbitrable is typically a question for judicial determination. Therefore, except where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter."

### III. ARGUMENT

#### A. No Valid Arbitration Agreement Exists

Ms. Oyola's claims are not subject to the purported arbitration agreement in this case. It is, of course, Midland's burden to prove the existence of an enforceable arbitration agreement. *FIA Card Services, N.A. v. Weaver*, 62 So. 3d 709 (La. 2011) (assignee of debt has burden to prove the existence of an enforceable arbitration agreement against a consumer). However, the evidence in this case plainly shows the contrary - that there was no agreement to any purported arbitration clause.

"The issue of whether the parties had a valid agreement to arbitrate is governed by general principles of state contract law. The party seeking to compel arbitration . . . has the burden of proving, by a preponderance of the evidence, the existence of a valid and binding agreement to arbitrate." *Acher v. Fujitsu Network Communications, Inc.*, 354 F.Supp.2d 26, 36 (D. Mass., 2005). Under Massachusetts law, a valid contract requires offer, acceptance, and consideration." *Id.* (citations and quotations omitted). In this case, there is assuredly an offer and

consideration. The question is therefore whether Ms. Oyola accepted the arbitration clause.

Midland has provided no evidence that Ms. Oyola expressly accepted the arbitration clause by signature, initial, electronic consent, or other. Rather, its sole argument is that her acceptance should be implied based on the fact that she used the card. (Mtn to Compel, at 3). Midland's evidence, though, fails to show that Ms. Oyola ever received notice of this arbitration agreement.

Regarding proof of delivery, Midland has not provided a copy of any document addressed to Ms. Oyola. It's only evidence on this point is an affidavit from Vicki Scott (Mtn to Compel, Ex. A). Her testimony, though, is not based on any personal knowledge but rather solely through a review of computer records. (Aff. of Scott, at ¶ 5). She states that a copy of the arbitration agreement was mailed to Ms. Oyola, but she provides no testimony regarding any procedures used either by Credit One or herself to verify this. No copy of any document addressed to Ms. Oyola is provided, and Ms. Oyola directly disputes receiving any such document. Ex. A, at ¶ 3.

A mere statement that the terms and conditions were provided to a consumer, without more, is insufficient to create a presumption of delivery. *See NCO Portfolio Mgmt. v. Gougisha*, 985 So. 2d 731 (La. Ct. App. 2008) (no presumption of delivery where creditor provided only the terms and conditions with no supporting evidence, and no evidence linking the arbitration terms to the specific consumer at issue); *Yates v. CACV of Colo., LLC*, 693 S.E. 2d 629, 635 (Ga. Ct. App. 2010) (denying debt collector's petition to confirm arbitration award when debt collector submitted only "undated, unauthenticated photocopy of certain 'additional' terms of an MBNA credit agreement" with "no evidence" connecting it to the consumer.").

In a similar scenario, the U.S. District Court for the Northern District of Illinois denied a

motion to compel arbitration, stating:

> The presumption of delivery can be invoked either by presenting evidence of actual mailing such as an affidavit from the employee who mailed the [letter], or present[ing] proof of procedures followed in the regular course of operation s which give rise to a strong inference that the [letter] was properly addressed and mailed. . . The [creditor] has failed to present evidence of either sort. [The card issuer's witness] does not claim that she was the person who mailed the notice. Nor does she attest to the procedures followed in the regular course of operations to ensure proper addressing and mailing of notices. Instead, she reaches conclusions about the mailing without indicating that she has any personal knowledge of any of procedures that were followed, and she says nothing about how addresses were selected for use in the mailing, what [the creditor's] records showed [the card holder's] address to be at the time, or what procedures were followed to ensure that all cardholders received notice. Further, [the card issuer's witness's] declaration does not establish that it was [the card issuer's] routine practice to note in a cardholder's file if and when mail was returned unopened or undeliverable or if and when the cardholder sent correspondence to the company. Without such evidence, the Court can not apply the presumption of delivery.

*Kennedy v. Conseco Finance Corp.*, 2000 WL 1760943, at *4 (N.D. Ill. Nov. 30, 200) (citation and quotation omitted). S*ee also Acher v. Fujitsu Network Communications, Inc.*, 354 F. Supp. 2d 26 (D. Mass. 2005) (company's assertion that policy containing arbitration clause was circulated to all employees insufficient to meet burden of proof when employee testified he had never received policy).

Moreover, even if the Court determines that Midland is entitled to a presumption of delivery, that presumption is rebuttable. *Neuson v. Macy's Dep't Stores Inc.*, 249 P.3d 1054, 1057 (Wash. App., 2011) ("[T]he presumption is not conclusive.") Submitted herewith Ms. Oyola has provided an affidavit specifically stating that she has never received notice of this purported arbitration agreement. *See* Ex. A.

To the extent the Court determines Midland is entitled to a rebuttable presumption of delivery, then there is a clear factual dispute regarding the alleged acceptance of this agreement.

Ms. Oyola would therefore request a jury trial in this Court regarding the enforceability of the purported arbitration agreement under to the Federal Arbitration Act 9 U.S.C. § 4 (a party resisting enforcement of an arbitration clause is entitled to a jury trial regarding enforceability). This right to a jury trial is widely accepted. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (section 4 requires a trial when there are disputed issues of fact over the existence or validity of the arbitration agreement); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 129, 1283 (10th Cir. 1997) (a jury trial is required under section 4 unless there is no genuine dispute of fact regarding the validity of the arbitration agreement).

### B. Midland Is Not Entitled to Enforce The Arbitration Agreement

Alternatively, even if there was an arbitration agreement, though, it does not follow that Midland is entitled to enforce it in this case. It has not provided sufficient proof of assignment, including assignment of rights and obligations under this purported arbitration clause. The arbitration agreement itself consciously omits 'assignees' from the list of parties who may enforce it and, in any event, Ms. Oyola's claims fall outside its scope. Moreover, Midland has waived any right to enforce the arbitration agreement in this case due to prior litigation conduct. By definition, each and every class member in this case has already been sued in a court by Midland.

Additionally, the arbitration agreement itself is a one-way contract of adhesion, in which the only claims susceptible of being arbitrated are a consumer's claims against Midland. As explained below, debt collection claims like Midland's are simply not arbitrable under the terms of this clause. Such one-way terms are unconscionable and unenforceable.

Specifically, Midland is not entitled to enforce the arbitration agreement because: (1) the

arbitration clause, by its express terms, does not apply to assignees such as Midland; (2) Midland has waived it right to enforce the agreement by engaging in litigation conduct; and/or (3) it has not provided sufficient evidence that it is the current holder of Ms. Oyola's account.

1. **The Arbitration Agreement Is Not Enforceable By Midland**

The purported Arbitration Agreement with Credit One Bank states:

> Claims subject to arbitration include not only Claims that relate direct to us, a parent company, affiliated company, *and any predecessors and successors* (and the employees, officers and directors of all of these entities), but also Claims for which we may be directly or indirectly liable, even if we are not properly names at the time the Claim is made.

(Mtn. to Compel, Ex. A, Sub-Ex. C) (emphasis added). Notably absent from this language is any reference to assignees. Midland has attempted to avoid this issue by styling itself as a "successor," (Mtn to Compel, at 9-10, and 14) but this mischaracterization is obviously flawed.

Arbitration agreements are "as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 394, 404 n.12, 87 S. Ct. 1801 (1967). Accordingly, "[c]ourts generally should apply ordinary state-law principles governing contract formation in deciding whether such an [arbitration] agreement exists." *First Options Chicago v. Kaplan,* 514 U.S. 938, 944, 115 S. Ct. 1920 (1995). Under Massachusetts law, terms of a contract are construed in their usual and ordinary sense. *Ruddy v. Ruddy*, 84 Mass.App.Ct. 1110, 993 N.E.2d 752 (Mass. App., 2013). If "the terms of [the Arbitration Clause], its conditions and exclusions, are clear and specific, and leave no room for ambiguity or for diverse interpretations, they should be thus applied." *Dialysis Access Ctr. Llc v. Rms Lifeline Inc.*, 638 F.3d 367 (1st Cir., 2011).

In this case, there is no ambiguity. A successor may enforce the arbitration agreement,

but an assignee may not. An assignee is "[o]ne to whom property rights or powers are transferred by another." while a successor is "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary, 127, 1473 (8th ed. 2004). "The term 'successor' in contract law is a term of art . . . When applied to corporations, the term 'successor' does not ordinarily connote an assignee, but is normally used in respect to corporate entities, including corporations becoming invested with the rights and assuming the burdens of another corporation by amalgamation, consolidation, or duly authorized legal succession, and does not contemplate acquisition by ordinary purchase from another corporation." *TYCO Valves & Controls, L.P. v. Colorado*, 365 S.W.3d 750, 773 (Tex. App., 2012).

In this case, Midland's evidence exclusively refers to its acquisition of Ms. Oyola's account as an assignment. The Scott Affidavit states that the account was "assigned and conveyed" from Credit One to MHC Receivables, LLC, and then subsequently further "assigned and conveyed" to Sherman Originator III, LLC. (Mtn. to Compel, Ex. A, ¶¶ 6-7). The Declaration of James Collins states that the account was then further "assigned and sold" to Midland. (Mtn. to Compel, Ex. B, ¶ 6). There is plainly no argument that Midland succeeded Credit One by merger, acquisition, or other. Rather, its only argument is that Midland is an assignee. And the language of the arbitration agreement is clear - assignees have no right to enforce it.

Additionally, even if the Court were to determine that the arbitration agreement is ambiguous on this point, that ambiguity should be construed against the drafter. The federal policy in favor of arbitration is only applicable in determining the terms of a validly formed and

enforceable arbitration agreement that is ambiguous about whether it covers the dispute at hand. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2858, 561 U.S. 287 (2010) explaining that the presumption of arbitrability comes into play, if at all, only after the court determines that a valid agreement to arbitrate exists between the parties to the dispute). In this context, where the formation and enforceability of the arbitration agreement is the basis of dispute, the general rule under Massachusetts law that ambiguities are construed against the drafter applies. *Benalcazar v. Goldsmith*, 507 N.E.2d 1043, 400 Mass. 111 (Mass., 1987).

Accordingly, the plain language of the arbitration agreement states that Midland is not entitled to enforce it as an assignee. Moreover, to the extent this language is ambiguous, the language must be construed against the drafter and in favor of Ms. Oyola.

### 2. Midland Has Waived Its Right To Enforce The Arbitration Agreement

The First Circuit has "repeatedly held that parties may waive their right to arbitration and present their dispute to a court." *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 221 (1st Cir. 1995) (citation and quotation omitted). Numerous courts have held that a party who brings a lawsuit acts inconsistently with its right to compel arbitration and thereby waives it. *See United Computer Sys., Inc. v. AT&T Corp.*, 2998 F.3d 756 (9th Cir. 2002) (filing of a state court complaint was inconsistent with right to arbitrate); *Kenyon Int'l Emergency Services, Inc. v. Malcolm*, 2010 WL 2303328 (S.D. Tex. June 7, 2010) (waiver when party filed suit twice, among other things); *Multicare Physicians & Rehab. Group, Prof'l Corp. v. Wong*, 2006 WL 2556584 (Conn. Super. Ct. Aug. 15, 2006) (party waived right to compel arbitration by filing complaint in court asserting a number or arbitrable claims); *Blackburn v. Citifinancial, Inc.*, 2007 WL 927222 (Ohio Ct. App. Mar. 29, 2007) ("by actively pursuing litigation in lieu of arbitration

by filing a complaint to enforce its contractual rights under the note, Citifinancial has waived its own arbitration clause.").

In determining whether a party has waived its right to compel arbitration,

> federal courts typically have looked to whether the party has actually participated in the lawsuit or has taken other action inconsistent with his right, . . . whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, . . . whether there has been a long delay in seeking the stay or whether the enforcement of arbitration was brought up when trial was near at hand. . . .
>
> Other relevant factors are whether the defendants have invoked the jurisdiction of the court by filing a counterclaim without asking for a stay of the proceedings, . . . whether important intervening steps (e.g., taking advantage of judicial discovery procedures not available in arbitration . . .) had taken place, . . . and whether the other party was affected, misled, or prejudiced by the delay. . . .

*Creative Solutions Group v. Pentzer Corp.*, 252 F.3d 28, 32 (1st Cir., 2001)

In this case, Midland has no doubt engaged in substantial litigation conduct against Ms. Oyola and every class member. In fact, that is the basis of this class action - all classes are specifically defined to include only those against whom Midland "filed or caused to be failed a complaint in a Massachusetts court." (First Am. Complaint, ¶¶ 22-24). Ms. Oyola and all other members of each class have suffered prejudice directly arising from or related to these court filings, in the form of a judgment against them, monies wrongfully collected, attorney's fees, credit damage, and/or emotional distress. Midland cannot now reasonably claim that its actions have always been consistent with its intent to arbitrate disputes. Accordingly, it has waived any right to now compel arbitration.

### 3. Midland Has Not Provided Sufficient Evidence of Assignment

"[A]n assignee of contract rights stands in the shoes of the assignor and has no greater rights against the debtor than the assignor had." *Graves Equipment, Inc. v. M. DeMatteo Constr. Co.*, 397 Mass. 110, 112 (1986). It is the creditor's burden to prove standing to sue by assignment. *Kimhow Corp. v. Rawji*, 2012 Mass. App. Div. 48 (2012).

In this case, Midland has provided no admissible evidence that it is the current holder of Ms. Oyola's account. Neither the Scott Affidavit nor the Collins Declaration are based on direct personal knowledge. Mtn. to Compel, Ex. A. at ¶ 5; Mtn. to Compel, Ex. B. at ¶ 2. Both also purport to include multiple bills of sale and assignment documents as exhibits, but none of those documents reference Ms. Oyola's account in any way. Under Massachusetts law, this evidence is insufficient.

The Massachusetts Appellate Court in *Norfolk Financial Corp. v. Mazard,* 2009 Mass. App. Div. 255 (2009), considered a debt collector's evidence that was similarly deficient. In denying the collector's motion for summary judgment and instead entering summary judgment in favor of a consumer, the Court noted that the debt collector's affidavit was not based on personal knowledge and that the consumer's account had not been identified in any of the bills of sale submitted as evidence.

It is also irrelevant whether a default judgment has already been obtained by Midland, as any such judgment is void. *Newton v. LVNV Funding, L.L.C.*, 2015 WL 789516 (Mass. Super. Ct. Oct. 27, 2015). Accordingly, Ms. Oyola's dispute on this issue does not raise any preclusion issues.

### C. Ms. Oyola's Claims Are Outside the Scope of the Arbitration Agreement

Arbitration agreements are "as enforceable as other contracts, but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 394, 404 n.12, 87 S. Ct. 1801 (1967). In this case, the plain language of the arbitration agreement demonstrates that Ms. Oyola's claims are not subject to arbitration. Specifically, the agreement states that arbitration applies only to collection matters "related to your account."

The scope of this language should be construed much narrower than the expansive phrase "arising from or related to." *Prima Paint Corporation v. Flood Conklin Mfg Co*, 388 U.S. 395, 398, 87 S.Ct. 1801 (1967) (an arbitration clause including claims "arising out of or relating to" is "broad"); *McCarthy v. Azure*, 22 F.3d 351, 358 (1st Cir. 1994) (interpreting arbitration clause including claims "arising under" as more narrow than a clause including claims "arising out of or relating to").

In the First Circuit, the scope of an arbitration agreement is determined under state contract law. *FPE Foundation v. Cohen*, 801 F.3d 25 (1st Cir. 2015) (interpreting the phrase "relates to" as requiring a "significant relationship" under Florida law). Plaintiff's counsel is unaware of any reported decision construing only the phrase "related to" under Massachusetts law.[1] However, the plain meaning of "related to" is to "stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Department of Revenue v. Estate of Shea*, 885 N.E.2d 866, 71 Mass. App. Ct. 696 (Mass. App. 2008) (citing to Black's Law Dictionary).

---

[1] In *Department of Revenue v. Estate of Shea*, 885 N.E.2d 866, 71 Mass. App. Ct. 696 (Mass. App. 2008), the Court suggested that the phrase "relating to" was construed broadly in *Commonwealth v. Philip Morris, Inc.*, 448 Mas. 836, 864 N.E.2d 505 (2007). However, the arbitration clause in *Philip Morris* specifically included claims "arising out of or relating to." 864 N.E.2d at 512.

In this case, Ms. Oyola's claims are not "related to" her Credit One account. She is not disputing her liability either partially or totally, or any other charges owed to Credit One. She is not claiming a billing dispute, identity theft, unlawful billing practices, or any other claim that has any connection with Credit One.

Rather, she alleges that Midland, a multiple-generation assignee, was not entitled to sue her under state law. Midland has given Ms. Oyola an entirely new account number, ending 5530, and has engaged a new account servicer. (**Exhibit B**). Her claims simply have no bearing, association, or connection with Credit One.

In fact, Ms. Oyola's claims against Midland are criminal in nature, as G.L. c. 93, § 28 also provides that (in addition to the remedies sought in this case) violators may be punished by a fine and/or imprisonment for up to three months. *Everett v. Henderson*, 150 Mass. 411, 23 N.E. 318 (Mass. 1890) ("A provision for punishment by imprisonment is of a criminal nature, and is not an ordinary incident of civil proceedings."). As such, Midland's actions fall well-outside the scope of this purported arbitration agreement.

### D. The Arbitration Agreement is Unconscionable

Finally, Midland has also failed to show that the purported arbitration agreement is enforceable, as it is a one-way contract of adhesion that is plainly unconscionable. Accordingly, it should not be enforced by this Court.

#### 1. The Purported Delegation Clause Is Invalid

Midland wrongly argues that, pursuant to a delegation clause, the language of the arbitration agreement itself deprives the Court of jurisdiction to consider this issue. (Mtn. to Compel, at 6). Instead, it argues that Ms. Oyola must let an arbitrator decide such gateway issues.

However, Ms. Oyola's claims are not subject to the purported delegation clause.

To be valid, the Supreme Court has confirmed on multiple occasions that a delegation clause must be clear and unmistakeable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920 (1995) (holding that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakeabl[e] evidence that they did so."); *Rent-A-Center, West, Inc. v. Jackson*, 560 U.S. 63, 70 n.1, 130 S. Ct. 2772 (2010) (same).

In this case, Ms. Oyola asserts that she never entered into the arbitration agreement, among other things. Her dispute is with the *formation* of the agreement, not its substance. Conversely, the delegation clause cited by Midland only permits the arbitrator to decide gateway issues related to the terms of the agreement itself.

In *Rent-A-Center*, the Supreme Court determined that a delegation clause was clear and unmistakeable when it stated, "The Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, *or formation* of this Agreement including but not limited to any claim that all or any part of this agreement is void or voidable." 560 U.S. at 70 n.1 (emphasis added). Conversely, the purported delegation clause in this case only applies to "the application, enforceability or interpretation of this Agreement, including this arbitration provision." (Mtn. to Compel, Ex. A, Sub-Ex. C). Any dispute regarding contract formation is plainly left to the Court.

In *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770 (Mo. 2014), the court considered a similar arbitration agreement stating that the arbitrator will resolve disputes "relating to the applicability or enforceability of the agreement." *Id*. at 774. However, the plaintiff in that case disputed the formation of the agreement, not the substance of it. In holding that the agreement was not clear

and unmistakeable the court noted, "A dispute 'relating to the applicability or enforceability' of the agreement presupposes the formation of a contract. [Plaintiff's] argument that there was no consideration to create a valid agreement raises a contract formation issue rather than an applicability or enforceability issue." *Id*. at 774.

Similarly in this case, Ms. Oyola disputes the formation of this agreement, which is not subject to the express terms of the purported delegation clause.

Moreover, it should be noted that the arbitration agreement in this case was issued in 2014, which was nineteen years after the Supreme Court's decision in *First Options of Chicago* and four years after its decision in *Rent-A-Center*. The agreement is a contract of adhesion that was undoubtedly drafted with assistance of legal counsel. Credit One easily could have added contract formation issues into this delegation clause but it chose not to. This Court should not now allow Credit One's third-generation assignee to add substantive language such as this into the agreement. *Chase Commercial Corp. v. Owen*, 588 N.E.2d 705, 708, 32 Mass.App.Ct. 248 (Mass. App. Ct., 1992) ("When construction of such an agreement is in issue, it is to be construed strictly against the drafter.")

## 2. **Arbitration Agreement Is Unconscionable**

Finally, Ms. Oyola asserts that the purported arbitration agreement in this case is an unenforceable contract of adhesion. It is a one-sided agreement favoring the creditor that was proposed on a take it or leave it basis,

"The First Circuit has decided that for an arbitration agreement to be considered a contract of adhesion, the party making that claim would have "to show both a lack of meaningful choice about whether to accept the provision in question, and that the disputed provisions were

so onesided as to be oppressive." *Bull Hn Info. Systems, Inc. v. Hutson*, 118 F.Supp.2d 55, 61 (D. Mass., 1999). "Generally, however, such contracts are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances. 588 N.E.2d at 708. In this case, the purported arbitration agreement falls well-within the standard.

At the outset, it should be noted that Ms. Oyola does not dispute the existence of any debt owed to Credit One. She of course understood that by using the credit card she would be required to pay her debt, and that interest and other fees might be added to her balance. (Aff. of Oyola at ¶ 4). However, she denies ever entering into this arbitration agreement and asserts that even if her assent is implied by this court, the agreement is unconscionable and should not be enforced. *Id*.

Under Massachusetts law, "unconscionability must be determined on a case by case basis . . . giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Miller v. Cotter*, 863 N.E.2d 537, 448 Mass. 671 (Mass., 2007). "If the sum total of the provisions of a contract drive too hard a bargain, a court of conscience will not assist its enforcement." *Waters v. Min Ltd*., 412 Mass. 64, 587 N.E.2d 231 (Mass., 1992)

There should be no doubt that the arbitration agreement is a contract of adhesion that was offered on a take it or leave it basis. The agreement itself offers no ability to opt-out, and had Ms. Oyola sought to do so Midland's own evidence clearly states that the credit card would have been closed. Specifically, Ms. Scott's Affidavit states that if a customer were to opt-out of the arbitration clause, "a notation is made on the account holder's records and the account is closed."

(Aff. of Scott, at ¶ 9).

Moreover, the arbitration agreement is deceptively structured to look like a mutual obligation when in fact it is clearly one-sided. In reality, Midland's consumer collection claims are simply not arbitrable under this agreement. Instead, the only claims that would potentially be arbitrable are a consumer's claims against Midland.

The arbitration agreement specifies that the arbitrator must be either the American Arbitration Association (AAA) or JAMS. AAA, however, simply does not accept consumer debt collection claims in arbitration if a consumer disputes its validity. (**Exhibit C**, Notice on Consumer Debt Collection Arbitrations). JAMS, on the other hand, will accept these types of cases so long as certain criteria are met, one of which is that all costs of the arbitration must be borne by the debt collector except a $250 filing fee that would be due only if the consumer initiates the arbitration. (**Exhibit D**, JAMS Policy on Consumer Arbitration Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness, p.3, ¶ 7).

Midland's purported arbitration agreement fails this JAMS requirement because it only provides that Midland will pay fees incurred "for the first day" of the arbitration hearing. (Mtn. to Compel, Ex. A, Sub-Ex. C). JAMS procedural rules, however, clearly provide for multiple-day hearings. (**Exhibit E**, JAMS Comprehensive Arbitration Rules & Procedures, Rule 19(a) ("The Arbitrator and the Parties shall attempt to schedule consecutive Hearing days if more than one day is necessary.")). Accordingly, any debt collection claim Midland seeks to assert against Oyola or any other consumer under this arbitration clause is simply not arbitrable.

Conversely, there are no such limitations imposed by AAA or JAMS on arbitration claims initiated by consumers against a debt collector. The oppressive result is that only

consumer claims are arbitrable under this agreement. Such a one-sided agreement is clearly unconscionable, particular in the field of debt collection. *See Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 472, 700 N.E.2d 859 (Ohio, 1998) (an "arbitration clause, contained in a consumer credit agreement with some aspects of an adhesion contract, necessarily engenders more reservations than an arbitration clause in a different setting, such as in a collective bargaining agreement, a commercial contract between two businesses, or a brokerage agreement."); *Simpson v. Msa of Myrtle Beach, Inc.*, 644 S.E.2d 663, 670, 373 S.C. 14 (S.C., 2007) (arbitration clause between consumer and automobile retailer should be analyzed with "considerable skepticism.").

In this case, Midland is attempting to hide behind this unconscionable arbitration clause to prevent a class action from proceeding in this Court, which is based on Midland's blatant violations of and disregard for Massachusetts debt collection licensing laws. Ms. Oyola respectfully requests that the Court not allow this injustice.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Abigail Oyola, on behalf of herself and all others similarly situated, respectfully requests that the Court deny Midland's Motion to Compel in its entirety.

Respectfully submitted,

Plaintiff,
Abigail Oyola,
By counsel,

*/s/ Christopher M. Brine*
Christopher M. Brine (BBO 679289)
Brine Consumer Law
100 Grove Street, Suite 210
Worcester, MA 01605
P - 508.556.1899
F - 508.556.9951
cmb@brineconsumerlaw.com

Donald A. Yarbrough, Esq.
Attorney for Plaintiff
Post Office Box 11842
Ft. Lauderdale, FL 33339
Telephone: 954-537-2000
Facsimile: 954-566-2235
don@donyarbrough.com

O. Randolph Bragg
Horwitz, Horwitz & Associates
25 East Washington Street, Suite 900
Chicago, Illinois 60602
(312) 372-8822
(312) 372-1673 (facsimile)
rand@horwitzlaw.com

July 5, 2017

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 5, 2017.

*/s/ Christopher M. Brine*
Christopher M. Brine