UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ABIGAIL OYOLA, on behalf of herself and all other persons similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 17-40040-TSH<br>**[LEAVE TO FILE GRANTED 9/5/17]** |
| MIDLAND FUNDING, LLC, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT MIDLAND FUNDING LLC'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
ARBITRATION, DISMISS THE CASE, AND STRIKE CLASS ALLEGATIONS**

Defendant Midland Funding, LLC ("Defendant" or "Midland Funding"), pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14 and this Court's Order granting leave [Doc. No. 26], hereby submits this Reply Memorandum in support of its Motion to compel arbitration of the individual claims filed by Plaintiff Abigail Oyola ("Plaintiff"), dismiss Plaintiff's individual claims pending arbitration and strike the class allegations, or, in the alternative, stay the action (the "Motion to Compel").

**PRELIMINARY STATEMENT**

In a misguided effort to avoid the obligations of the mandatory arbitration agreement she agreed to when she applied for, obtained, and used her credit card, Plaintiff's Opposition [Doc. No. 23] and Affidavit [Doc. No. 23-1] do nothing to save this matter from being compelled to arbitration. While Plaintiff makes the conclusory assertions that she (i) never agreed to an arbitration provision with Credit One Bank, (ii) never received a proposed arbitration agreement, and (iii) was never given notice that any of her claims may be subject to arbitration, the law in this Circuit makes clear based

on the record before this Court that this case should have been filed in an arbitral forum in the first place and not this Court. To that end, the Scott Affidavit and Collins Declaration before this Court [Doc Nos. 20-1 and 20-2] establish that Midland Funding owns the subject account, that the applicable Cardholder Agreement contains a mandatory arbitration provision, and that Plaintiff was mailed the Cardholder Agreement. On this basis alone, this Court should compel arbitration.

Moreover, this Court should disregard Plaintiff's scattered approach to avoid her obligation to arbitrate. To that end, under Supreme Court and First Circuit precedent the arbitration agreement is enforceable by Midland Funding, Midland Funding has not waived its right to enforce the arbitration agreement, Midland Funding has provided more than adequate evidence establishing it owns Plaintiff's account, Plaintiff's claims are within the scope of the arbitration agreement, and the arbitration agreement is not unconscionable. For these reasons, more fully set forth below, this Court should grant Midland Funding's Motion to Compel Arbitration.

## ARGUMENT

### I. PLAINTIFF HAS FAILED TO PROPERLY CONTEST THE DELEGATION CLAUSE

Plaintiff contends that the delegation clause is purportedly invalid because she contests the formation of her credit card agreement. [Doc. 23 at 14]. At the outset, the fact that Plaintiff contests the formation of the agreement does not make the delegation clause invalid nor does Plaintiff cite to any authority holding as such.

Moreover, the United States Supreme Court has explicitly held that "a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006). As such, "as a matter of substantive federal arbitration law . . . unless [plaintiff's] challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id*. at 445-46.

Accordingly, where there is a provision delegating these decisions to an arbitrator, the court need not – and should not – decide them. *See Rent-A-Center, W., Inc. v. Jackson*, 130 S.Ct. 2772, 2777 (2010) (recognizing "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.") (citations omitted).

Under this framework, a number of federal courts have compelled arbitration – even where a plaintiff disputes that he or she agreed to an arbitration provision in a card agreement – based on a finding that a delegation provision requires an arbitrator, and not a court, to decide that issue. For example, a federal district court granted a motion to compel arbitration in favor of Midland on the basis of a delegation provision in *Tana Spencer v. Midland Funding, LLC*, Case No. 3:16-cv-00093-BR, 2016 WL 8677216 (D. Or. Oct. 21, 2016). Confronted with an evidentiary record virtually identical to the one here, and a plaintiff claiming that she never entered into or received the subject card agreement, the *Spencer* court relied on the reasoning of *Buckeye Check Cashing* to conclude that:

> Plaintiff does not specifically challenge the validity of the arbitration provision standing alone, but instead asserts various reasons why the Card Agreement itself is unenforceable. Following *Buckeye* and *Cox*, the Court, therefore concludes Plaintiff's challenge to the validity of the Card Agreement and the applicability and enforcement of the arbitration provision is an issue that is reserved for the arbitrator.

*Id*. at *4.

Similarly, in *Carr v. Citibank, N.A.*, Case No. 15-cv-6993 (SAS), 2015 WL 9598797 (S.D.NY. December 23, 2015), a federal district court sitting in the Southern District of New York compelled arbitration on the basis of a delegation provision where a plaintiff contested entering into a credit card agreement. In so doing, the *Carr* court held that because the plaintiff challenged the card agreement and not "the specific arbitration provision contained therein, that provision is valid and enforceable."

*Id*. at *2. The court further determined that "[plaintiff's] argument as to whether she ever entered into the Card Agreement at all must be considered by an arbitrator, and not this Court." *Id*.

The court in *Bellows v. Midland Credit Management, Inc.*, Case No. 09CV1951-LAB, 2011 WL 1691323, *2 (S.D. Ca. May 4, 2011) also came to this same conclusion, reasoning that "the decision is even easier here, because the arbitration agreement provides that the arbitrator is to decide questions concerning the validity of the arbitration agreement" and finding that "[a]s provided in the Agreement the determinations of whether the arbitration agreement was validly entered into, and whether Midland can enforce it, are committed to the arbitrator." *See also Danley v. Encore Capital Group, Inc.*, 2016 WL 2851343, * 4 (E.D. Mich. May 16, 2016) (compelling arbitration where plaintiff failed to challenge delegation provision and stating "the Supreme Court has held that such a failure requires the Court to 'treat it [the delegation provision] as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole to the arbitrator.'") (*citing Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)).

Here, the Arbitration Agreement specifically delegates to the arbitrator the issues of the application, enforceability, or interpretation of the Cardholder Agreement, including the Arbitration Agreement. Specifically, the Cardholder Agreement states, "Claims subject to arbitration include . . . the application, enforceability or interpretation of this Agreement, including this arbitration provision . . . ." [Doc. No. 20-1 at 19]. Thus, pursuant to the Arbitration Agreement, whether this dispute is arbitrable is a matter properly decided by the arbitrator, not the Court.

Plaintiff's attempt to distinguish *Rent-a-Center; W. v. Jackson*, 560 U.S. 63 (2010) on the basis that the delegation clause there specifically stated that the arbitrator had authority to resolve disputes regarding the "formation" of the agreement is a non-starter. This is because the Arbitration Agreement here delegates to the arbitrator disputes concerning the "establishment" of Plaintiff's "account," and

4

"any other matters relating to [Plaintiff's] account." Moreover, the Arbitration Agreement states that "[a]ny questions about what claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced."[1]

## II. PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION BECAUSE MIDLAND FUNDING WAS CREDIT ONE'S SUCCESSOR AND ASSIGN

Plaintiff improperly contends that Defendant is somehow not a successor in interest to Credit One Bank and therefore barred from enforcing the arbitration agreement.[2] Plaintiff also appears to assert that the Arbitration Agreement does not apply to assigns. The clear language of the Arbitration Agreement, however, defines Credit One to include its successors and assigns. [Doc No. 20-1 at 15] (defining "we," "us," "our," and "Credit One Bank" [as] "Credit One Bank, N.A., its successors or assigns"). In advancing this misguided argument, Plaintiff fails to distinguish two virtually identical cases where a motion to compel arbitration was granted in favor of Defendant's affiliate, Midland Credit Management, based on the exact same Arbitration Agreement in a Credit One cardholder agreement. *See Harris v. Midland Credit Management, Inc.*, No. 15-4453, 2016 WL 475349, *2 (D.N.J. February 8, 2016) (holding that "Midland Funding, LLC is a successor to Credit One"); *Jeffreys v. Midland Credit Management, Inc.*, No. 15-8470, 2016 WL 4443164, *2 (D.N.J. August 18,

---

[1] Plaintiff fails to address the numerous other cases relied on by Defendant in the Motion to Compel on this issue, including but not limited to, *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), *Spencer*, and *Bellows*. Instead, Plaintiff relies on an out-of-Circuit state court case from the Missouri Supreme Court, *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014), that is distinguishable because, among other things, the plaintiff's arguments regarding contract formation related to an alleged lack of consideration in the context of at will employment. Here, Plaintiff does not assert lack of consideration but erroneously contends that Plaintiff did not "accept" the arbitration agreement. Plaintiff has also failed to rebut Defendant's argument that any issues regarding the scope of the arbitration agreement are delegated to the arbitrator.

[2] The Bill of Sale and Assignment from Sherman Originator III LLC ("Sherman") to Midland Funding states that Sherman "does hereby sell, assign and transfer to Buyer, its successors and assigns, all right, title and *interest*" to the purchased accounts, including Plaintiff's account. [Doc. 20-2 at 8] (emphasis added). Accordingly, pursuant to the explicit terms of the Bill of Sale and Assignment, Midland Funding was a successor in interest to those accounts.

2016) ("MCM has been assigned the debt, and thus MCM is authorized to invoke the provisions in issue from the cardholder agreement . . . ").

By defining "us" to include Credit One's "assigns" the Cardholder Agreement establishes that Plaintiff's claims against Defendant fall within the mandatory arbitration provision. *See* Cardholder Agreement at 6, [Doc. No. 20-1 at 19] (stating that "Claims subject to arbitration include . . . claims that relate directly to us" and "Claims" relating to the "resulting relationships between you and us."). *See Hoefs v. CACV of Colorado, LLC*, 365 F.Supp.2d 69, 74 (D.Mass. 2005) (holding that "we" and "us", as used in the first sentence, not only means MBNA and CACV (MBNA's 'assign'), but all of CACV's 'agents', to wit, Cambece and the Law Office.").[3]

### III.   DEFENDANT DID NOT WAIVE ITS RIGHT TO COMPEL ARBITRATION

Plaintiff contends that Defendant waived its right to compel arbitration solely on the basis it filed a state court lawsuit seeking repayment on the underlying account. This contention is a non-starter. In *Schwartz v. CACH, LLC*, Case No. 13-12644-FDS, 2014 WL 298107 (D.Mass. Jan. 27, 2014), a Massachusetts district court rejected an identical claim. In so doing, the court held:

> CACH's decision not to invoke arbitration in the earlier state court actions is not relevant. The contract here provides that either party can elect arbitration as to 'any claim.' (Huber Aff., Ex. A at 39). It does not require that the parties either litigate all claims or arbitrate all claims. The collection actions, which CACH brought against plaintiff, are distinct from the claims brought here. CACH did not, therefore, waive its right to arbitrate the present dispute. (citations omitted).

*Id.* at *3.

Here, the Arbitration Agreement contains language similar to that upon which the *Schwartz* court relied in finding no waiver. *See* Cardholder Agreement at 6 [Doc. No. 20-1 at 19] (stating

---

[3] Plaintiff admits that Defendant is Credit One's assign throughout her Opposition [Doc No. 8-9] as well as in the Amended Complaint. *See* Compl. at ¶6 [Doc. No. 11 at 2] (alleging that "Midland purchased a defaulted debt owed by Ms. Oyola for a credit card account.").

6

"**EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION**.") (emphasis supplied).  The Cardholder Agreement also provides that a failure to enforce the arbitration provision does not constitute a waiver of other claims.  *See* Cardholder Agreement at 7 [Doc. No. 20-1 at 20] ("Failure or forbearance to enforce this arbitration provision at any particular time, or in connection with any particular Claims, will not constitute a waiver of any rights to require arbitration at a later time or in connection with any other Claims."). Based on the foregoing, Defendant has not waived its right to compel arbitration.[4]

## IV.  A VALID ARBITRATION AGREEMENT EXISTS

Plaintiff also argues that she never "accepted" the arbitration clause.  [Doc. No. 23 at 4].  In support of this contention, Plaintiff states that Defendant has provided no proof of delivery such as a copy of a document addressed to her.  Plaintiff cites to out-of-Circuit authority in asserting that Defendant was required to do more than submit a declaration indicating the Cardholder Agreement was mailed.

This Court should decline Plaintiff's effort to avoid the mandatory arbitration provision on this basis because the mailbox rule applies.  *See Hoefs*, 365 F.Supp. 69 at 72-73 (noting that the "mailbox rule" is a "settled feature of the common law" providing "that the proper and timely mailing of a document raises the rebuttable presumption that the document has been received.").  In *Hoefs*, the district court applied the mailbox rule and determined that it had not been adequately rebutted.  *Id.*

---

[4] Plaintiff cites to *Creative Solutions Group v. Pentzer Corp.*, 252 F.3d 28 (1st Cir. 2001) for the proposition that Defendant waived its right to arbitration by filing a state court suit.  Plaintiff misreads *Creative Solutions* because the question of whether "the litigation machinery has been substantially invoked" relates to the subject case at issue and not to other claims.  Accordingly, even under the *Creative Solutions* holding, the question here would be whether Defendant engaged in delay in seeking to compel arbitration in this case.  Defendant clearly has not delayed, because the Amended Complaint was filed on May 2, 2017, and Defendant moved to compel arbitration less than a month later on May 31, 2017.

The court found that deposition testimony indicating the document was mailed was sufficient to invoke the mailbox rule and rejected plaintiff's contention that the arbitration agreement may have been mailed to a post-office box that was shared with an ex-husband that may have thrown the document away. *Id*. at 73. In addition, the court found that plaintiff continued making payments on the account after the critical period at issue. *Id*.

Here, Plaintiff asserts in conclusory fashion that she "never received a copy of the proposed arbitration agreement" and denies "ever having entered into the arbitration agreement." [Doc. 23-1 at 1]. Plaintiff never denies that she received the Cardholder Agreement, that she continued using the card after receipt, or that she activated the card. [Doc. No. 23 at 16] ("She of course understood that by using the credit card she would be required to pay her debt and that interest and other fees might be added to her balance."). As in *Hoefs*, it can be adequately assumed – given that Plaintiff's self-serving denial of receipt amounts to nothing more than a conclusory allegation – that Plaintiff received the Cardholder Agreement at issue. *See Hays v. Jefferson Capital Systems*, Case No. 15-14025-GAO, 2017 WL 449590, *1 (D. Mass. February 2, 2017) ("The paper trail further shows that the plaintiff activated and used his card, manifesting his receipt of the agreement and his assent to its arbitration term.")[5]; *see also Lenfest v. Verizon Enterprise Solutions, LLC*, 52 F.Supp.3d 259, 264 (D. Mass. 2014) (holding that mailing of documents that included arbitration provision put plaintiff on notice as he "could have learned that the ADR clause governed his service with Verizon had he attempted to locate the product guide on Verizon's website that was referred to in his service agreement.").

---

[5] The Cardholder Agreement provides that "[b]y requesting, receiving, signing or using your Card, you agree as follows . . . ." [Doc. No. 20-1 at 15].

## V. THE ARBITRATION AGREEMENT IS NOT VOID ON THE GROUNDS OF UNCONSCIONABILITY

Plaintiff asserts that the agreement is unconscionable as a "unenforceable contact of adhesion." [Doc. 23 at 15]. At the outset, "the fact that the arbitration agreement may be a 'contract of adhesion' does not, standing alone, render the arbitration agreement unconscionable." *Barrasso v. Macy's Retail Holdings, Inc.*, Case No. 1:15-cv-13098-ADB, 2016 WL 1449567, *6 (D. Mass. April 12, 2016) (citations omitted); *see Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 12 n.4 (1st Cir. 2009) ([T]he fact that an agreement is a contract of adhesion . . . does not alone make the document invalid . . . .").

Moreover, given that the Arbitration Agreement delegates resolution of disputes regarding the validity of the arbitration agreement to the arbitrator, the Court should not determine the question of purported unconscionability. *See Awuah* at 12 ("The question here is simply who should decide the unconscionability issue, and the arbitration clause said in effect that this was for the arbitrator."). Even if this Court were to decide the issue (which it should not), the Arbitration Agreement is not unconscionable. *See Mattox v. Decision One Mortg. Co., LLC*, Case No. Civ. A. 01-10657-GAO, 2002 WL 31121087, *4 (D. Mass. Sept. 26, 2002) ("In substance, the plaintiffs argue that they had no realistic choice of rejecting the agreement and still closing their loans. But even if that fact is true, as I assume it is, it does not by itself provide a reason for invalidating the agreement to arbitrate."); *see also Barrasso* at *6 (rejecting plaintiff's claim that arbitration agreement was unconscionable on the basis plaintiff did not read or fully understand the terms and finding that one who "'signs a written agreement is bound by its terms whether he reads or understands them or not.'") (*citing Bose Corp. v. Ejaz*, 732 F.3d 17, 22 (1st Cir. 2013)).

Finally, Plaintiff is simply incorrect in her contention that the American Arbitration Association ("AAA") "does not accept consumer debt collection claims in arbitration if a consumer disputes its validity." [Doc. 23 at 17]. The Notice on Consumer Debt Collection Arbitrations (the

9

"Notice") [Doc. 23-1 at 5] upon which Plaintiff relies clearly states that matters included within the moratorium are "consumer debt collection programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute." Moreover, the Notice clearly states that "[t]he AAA will continue to administer all demands for arbitrations filed by consumers against businesses . . . .". In addition, numerous courts have rejected Plaintiff's argument. *See, e.g., Conroy v. Citibank, N.A.*, No. CV-10-04930 SVM (AJWx), 2011 WL 10503532 (rejecting virtually identical claim and including string cites).

## IV.   PLAINTIFF DOES NOT CONTEST THAT HER CLAIMS MAY ONLY BE ARBITRATED ON AN INDIVIDUAL BASIS

Given that Plaintiff does not contest that she must arbitrate her claims individually, this matter can only be compelled to arbitration on an individual basis. *See Hoefs*, 2014 WL 298107 at *2, n. 3 (determining that "because a court 'can only compel class arbitration if there is a contractual basis for concluding that [the parties] agreed to do so, *Stolt-Nielson*, 130 S.Ct. at 1775, and no such basis exists here, the Court will not compel class arbitration.").[6]

---

[6] The Court should also reject Plaintiff's contention that Defendant has not provided sufficient evidence of assignment. [Doc. No. 23 at 11]. To that end, it appears that Plaintiff's sole contention is that the Scott Affidavit and Collins Declaration were not based on personal knowledge. This does not render the Affidavit and Declaration inadmissible. *See Hays*, 2017 WL 449590, *2 (rejecting similar arguments that finding that the affiant is "qualified" and that his "declarations sufficiently authenticate the business records he has provided."). The *Hays* court also noted that "[a]s CB&T's assignee, Jefferson Capital can rely on the original creditor's business record and normal course of business to prove these facts." *Id*. at n.2.

**CONCLUSION**

Based on the foregoing reasons, Midland Funding respectfully requests that this Court enter an order compelling Plaintiff to arbitrate her claims in this action on an individual basis, dismissing the action pending such arbitration, and striking the class allegations, or, in the alternative, staying the action pending arbitration.

Respectfully submitted,

                MIDLAND FUNDING LLC.
                By its attorneys,

                /s/ Stephen P. Hall
                Gordon P. Katz (BBO #261080)
                Benjamin M. McGovern (BBO #661611)
                Stephen P. Hall (BBO #679583)
                HOLLAND & KNIGHT LLP
                10 Saint James Avenue
                Boston, MA 02116
                gordon.katz@hklaw.com
                benjamin.mcgovern@hklaw.com
                stephen.hall@hklaw.com

Dated: September 21, 2017

**CERTIFICATE OF SERVICE**

I, Stephen P. Hall, hereby certify that this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent those indicated as non-registered participants.

                /s/ Stephen P. Hall
                Stephen P. Hall