UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| ABIGAIL OYOLA, on behalf of herself and all others similarly situated,<br>Plaintiff,<br>v.<br><br>MIDLAND FUNDING, LLC<br>Defendant. | C.A. No. 17-cv-40040-TSH |

### DECISION AND ORDER ON DEFENDANTS MOTION TO COMPEL ARBITRATION, DISMISS THE CASE, AND STRIKE CLASS ALLEGATIONS
(Doc. No. 19)

**February 27, 2018**

**HILLMAN, D.J.**

### Background

Abigail Oyola ("Plaintiff") brought this action, on behalf of herself, and all others similarly situated, against Midland Funding, LLC ("Defendant") after the Defendant purchased an account she opened with Credit One Bank ("Credit One") in September 2014. She seeks damages for the Defendant's unlawful debt collection in violation of the Fair Debt Collection Practices Act, the Massachusetts Debt Collections Practices Act, M.G.L. c. 93, § 24A(a), and the Massachusetts Consumer Protection Act, M.G.L. c. 93A, § 2. Defendant subsequently filed the instant motion to compel arbitration on an individual basis, strike the class allegations in the Complaint, and dismiss the case.

1

**Facts**

On September 4, 2014, Plaintiff opened a Credit One credit card account (the "Account"). The Vice President of Credit One and an authorized representative of MHC Receivables, LLC ("MHC"), and FNBM, LLC ("FNBM"), Vicky Scott, states that after an account holder opens an account, Credit One mails their credit card, enclosed with Credit One's VISA/MASTERCARD CARDHOLDER AGREEMENT, DISCLOSURE STATEMENT AND ARBITRATION AGREEMENT ("Cardholder Agreement"). (Doc. No. 20-1 at 14-20). Plaintiff disputes ever receiving the Cardholder Agreement but does not dispute activating the Account or using her credit card. There is no credit card application or copy of the Cardholder Agreement with Plaintiff's signature in the record.

The Cardholder Agreement states that "[b]y requesting and receiving, signing or using your Card, you agree" to the terms and conditions of the Cardholder Agreement. (Doc. No. 20-1 at 15). Page six of the Cardholder Agreement states the following:

"ARBITRATION":

**PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY.**

(the "Arbitration Agreement"). (Doc. No. 20-1 at 19). The Arbitration Agreement further explains that claims "relating to your account" are subject to arbitration, including "the application, enforceability or interpretation of this Agreement, including this arbitration provision." (Doc. No. 20-1 at 15, 19). It also limits class actions or similar proceedings as it notes "Claims subject to

arbitration include Claims made as part of a class action or other representative action, and the arbitration of such claims must proceed on an individual basis." (*Id*. at 19).

On September 30, 2015, "Credit One sold, assigned and conveyed all rights, title, and interest to a series of accounts, including the Account, to MHC Receivables, LLC." (Doc. No. 20-1 at 3, 6). MHC subsequently sold, assigned and conveyed all rights, title, and interest to the Account to Sherman Originator III, LLC ("Sherman"). (Doc. No 20-1 at 3, 9). Plaintiff made a final payment on the Account on January 26, 2015. On September 13, 2015, her card was charged off with an outstanding balance of $600.36. On October 23, 2015, Sherman sold, assigned and conveyed all rights, title, and interest to the Account to Defendant. (Doc. No. 20-2 at 3, 8). The Cardholder Agreement states that it will continue to govern even if the "transfer or assignment of your account, or any amount on your account, to any other person." (Doc. No. 20-1 at 20).

## Discussion

There is a strong federal policy in favor of the enforcement of valid arbitration agreements. *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012). Pursuant to the Federal Arbitration Act, an agreement to arbitrate is a matter of contract law and "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. If a party challenges an arbitration agreement on "grounds as exist at law or in equity for the revocation of any contract" the arbitration agreement may be found invalid. *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 292 (D. Mass. 2016) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted)). It is the burden of the party seeking to compel arbitration to prove that a valid agreement to arbitrate exists, the movant has a right to enforce it, the other party is bound by it, and that the claim asserted falls within the scope of the arbitration agreement. *Bekele*, 199 F. Supp. 3d at 293. In the event a valid arbitration

agreement does exist, the court shall promptly compel arbitration and either stay the action pending arbitration or dismiss it. *Id*. (citing 9 U.S.C. §§ 3, 4).

Parties may "clearly and unmistakably agree" to submit threshold and gateway issues to the arbitrator. *Awuah v. Coverall North America, Inc*., 554 F.3d 7, 10 (1ˢᵗ Cir. 2009) (citing *Howsam v. v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83 (2002)). In the event a delegation clause submitting gateway issues to arbitration is included in the agreement, such a dispute must be submitted to the arbitrator, unless the party opposing arbitration challenges the arbitration provision specifically. *Id*. (citing B*uckeye Check Cashing v. Cardegna,* 546 U.S. 440, 443–45 (2006) (if challenging the contract as a whole and not specifically the arbitration clause, the dispute shall be submitted to the arbitrator).

### *The Delegation Clause*

The Defendant argues that in compliance with the delegation clause stating that "Claims subject to arbitration include…the application, enforceability or interpretation of this Agreement, including the arbitration agreement," this claim must be submitted to the arbitrator. (Doc. No. 20-1 at 19). Plaintiff contends that no agreement to arbitrate exists because she never received notice of and therefore never accepted an agreement to arbitrate. The Plaintiff focuses on the lack of evidence that Plaintiff received the Cardholder Agreement to support this argument. She further points to the fact that the delegation clause does not include the term "formation," precluding her challenge as to the formation of an agreement to arbitrate from the gateway issues in the delegation clause. The United States Supreme Court has found that "a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator" because "an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-49 (2006). Because the Plaintiff does not challenge the

formation of the Arbitration Agreement itself, but the receipt and formation of the Cardholder Agreement, as a whole, the delegation clause referring all matters pertaining to the application, interpretation and enforceability of the Cardholder Agreement must be submitted to the arbitrator. *See e.g., Spencer v. Midland Funding*, No. 3:16-cv-00093-BR, 2016 WL 8677216, *3-4 (D. Or. Oct. 21, 2016) (relying on *Buckeye* the court found that because the plaintiff challenged the card agreement as a whole and not the arbitration agreement itself, "the validity of the Card Agreement and the applicability and enforcement of the arbitration provision is an issue that is reserved for the arbitrator."). Subject to the delegation clause, the issues raised in the Plaintiff's opposition must be submitted to the arbitrator and not this Court. For this reason alone, the motion to compel must be granted.

*Valid Arbitration Agreement*

Even if the delegation clause was not applicable, a valid agreement to arbitrate exists, binding both parties. Here, the Plaintiff disputes the existence of an agreement to arbitrate. She argues that she did not assent to the terms of the Cardholder Agreement because she never received it. Plaintiff supports this assertion by arguing that there are no documents of express agreement evidenced by her signature, initial, or electronic consent. Additionally, Plaintiff points to the fact that the record does not contain a copy of the Cardholder Agreement addressed to her and argues that Ms. Scott's affidavit is insufficient to establish that the Cardholder Agreement was mailed to her after opening the Account. I disagree.

Ms. Scott's affidavit and attached exhibits establish that Credit One keeps business records of credit card accounts originated by, or on behalf of, Credit One, MHC, and FNBM, in their

5

ordinary course of business, and that she is familiar with the account agreements.[1] After review of the business records pertaining to the Plaintiff's Account, Ms. Scott determined that Plaintiff had opened the Account on September 4, 2014, that a credit card and Cardholder Agreement governing the Account were mailed to Plaintiff's Worcester, MA address, and that Plaintiff had not opted out of any terms or conditions of the Cardholder Agreement.[2] Moreover, Plaintiff does not deny activating her Account, receiving a card, or using it. The first paragraph of the Cardholder agreement provides that "[b]y requesting, receiving, signing or using your Card, you agree as follows…" and proceeds to list a number of terms and conditions. (Doc. No. 20-1 at 15). Immediately following this statement, it states, "IMPORANT NOTICE: Please read the Arbitration Agreement portion of this document for important information about your and our legal rights under this Agreement." *Id*; *See Hays v. Jefferson Capital Systems, LLC*, Case No. 15-14025-GAO, 2017 WL 449590, *1 (D. Mass. February 2, 2017) ("The paper trail further shows that the plaintiff activated and used his card, manifesting his receipt of the agreement and his assent to its arbitration term"). While there is no evidence of an express agreement, I find that the record is sufficient to establish a rebuttable presumption that Plaintiff was mailed the Cardholder Agreement, which Plaintiff has failed to adequately rebut. *See Hoefs*, 365 F. Supp. 2d at 72-73 ("The "'mailbox rule' is 'a settled feature of the federal common law' and 'provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.'") (internal citations omitted).

---

[1] Defendant, as Credit One's assignee, may rely on Credit One's business records to establish these facts. *See Hoefs v. CACV of Colorado, LLC*, 365 F. Supp. 2d 69, 73-74 (D. Mass. 2005).
[2] It is a regular business practice of Credit One to make a notation on an account holder's records and close the account if the account holder opts out of a specific term or condition of the Cardholder Agreement. (Doc. No. 20-1 at p. 4). Plaintiff's account did not have a notation and was not closed, reflecting the fact that she did not opt out of any term or condition. *Id*.

Additionally, the Defendant has the authority to enforce the Arbitration Agreement. Plaintiff argues that the Defendant does not have the authority to compel arbitration because the Defendant is merely an assign and because the Defendant has failed to provide sufficient proof of the assignment of rights and obligations pursuant to the Arbitration Agreement. The express language of the Cardholder Agreement defines "'we', 'us,' 'our,' and 'Credit One Bank' [as] 'Credit One Bank, N.A., its successors or assigns.'" (Doc. No. 20-1 at 15). It is clear from the language of the Cardholder Agreement that "us" includes "assigns," and therefore, as evidenced by the Scott Affidavit, the Collins Declaration and the Bill of Sale and Assignments from Credit One to Sherman and Sherman to Defendant, Defendant has the authority to enforce the Arbitration Agreement as the current owner of the Account. *See e.g., Harris v. Midland Credit Management, Inc.*, No. 15-4453, 2016 WL 475349, *2 (D.N.J. February 8, 2016) (holding that because the cardholder agreement "clearly defines Credit One to include its successors and assigns" and notes that claims subject to the arbitration agreement "include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors and successors" the defendant had the right to enforce the arbitration agreement).[3]

Lastly, this action falls within the scope of the Arbitration Agreement. "[A]ll doubts are resolved in favor of arbitration;…unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 450 (1st Cir. 2010) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 723 F.2d 155, 159 (1st Cir. 1983)). The language of the Arbitration Agreement, as discussed above, not only specifically includes claims involving "collection matters" "relating to"

---

[3] The cardholder agreement and arbitration agreement in *Harris* are the exact same as the Cardholder Agreement and Arbitration Agreement in the present case before this Court.

7

Plaintiff's account but states that "[a]ny questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way." (Doc. No. 20-1: p. 19). Because a reasonable interpretation of the Arbitration Agreement is that the unfair debt collection practices of the Defendant involved the debt incurred on the Account, which Defendant owns, the Plaintiff's argument loses.

## Conclusion

For the foregoing reasons, the Defendant's motion to compel arbitration, dismiss the case, and strike class allegations (Doc. No. 19) is ***granted***. All additional issues raised by the Plaintiff must be submitted to the arbitrator.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**